The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Be seated, please. All right. First case we'll take up is Irby and Mr. Patel. We heard from you. Good morning, Your Honors. At issue in this case is whether this Court should authorize a successive Section 2255 petition for Mr. Irby so that he can bring a Johnson challenge to a Section 924C conviction for use of a firearm in connection with a crime of violence. Your Honors, at this stage of the proceedings, Mr. Irby has a very low burden, a burden that Hubbard dictates that he has satisfied. In Hubbard, this Court held that a movement's application for authorization to file a Section 2255 petition should be authorized when he makes a prima facie showing of the gatekeeping requirements of 2255H2. And Hubbard further told us how that is to be satisfied. Hubbard said if a movement relies on a new case that the Supreme Court has, that produces a rule of constitutional law that the Supreme Court has made retroactive, then the gatekeeping requirements have been met. What happens if we determine as a matter of law that Mr. Irby did commit a crime of violence under the Force Clause? Well, Your Honor, in Hubbard, the Court did say that the focus has to remain on the gatekeeping requirements, but the Court can do a cursory glance of the merits. So if as a matter of – We're not prohibited from looking at that. Your Honor, you can do a very cursory glance of the merit, and that means that – What if we look at it just long enough to know that his claim is invalid? Your Honor, if it's affirmatively foreclosed, then yes, that it can be denied. By our view of the law, as in the question suggested, if we were to decide to say this falls within the Force Clause. I think if you affirmatively – and the Court did say in Hubbard that the government faces an almost insurmountable burden in arguing against the merits because all that we have to show is that it's not implausible that our claim – with a smaller peek and say the requirement that there has been a change in the law, a Supreme Court decision made retroactive to a case on collateral review, applies only to the residual clause. And because there – you have to satisfy two clauses, that's all we would have to – we wouldn't even have to decide the Force Clause if the Force Clause were available. Now, if we look at the Force Clause, it's as available, it seems, on a quick look, as a residual clause, maybe even more so. But Johnson only gives you plausibility on the residual clause, doesn't it? Well, Your Honor, Johnson – our claim is that the residual clause is void for vagueness, and certainly that claim is plausible after 16b. Without agreeing with you, I grant that for the purposes of my question. Right. The question here is we have – what do we have? Retaliatory killing. Yes. A murder type of thing. Yes, Your Honor. And he wants a second look at this late stage in the process because of Johnson. But Johnson doesn't implicate this. It does, Your Honor, because – Well, one clause, but you have to satisfy the other two. Right, right. But, Your Honor, in every case, there's a Force Clause and an enumerated offenses clause. Even in Welch, then, the court wouldn't have granted the application. Well, there was a waiver in Welch, wasn't there? I mean, the government didn't – wasn't concerned. They wanted the issue decided, the retroactivity issue. Right, but even Hubbard wouldn't be decided. You know, the petition wouldn't have been granted because there's always going to be an enumerated offense clause or Force Clause. But that – the claim here is that Johnson renders the residual clause void for vagueness. Then as to whether or not – That may be plausible. Right. It may be plausible, but it may be irrelevant. Right. But it's not irrelevant because that's the claim. That's the claim. That's the new rule, Your Honor, of constitutional law under which we are bringing our claim. As to whether or not something qualifies under the Force Clause, that's a question of prejudice. Right? That's not the stand-alone claim that's objective. I'm saying if you have three claims and one of them is governed by a constitutional provision and you have to satisfy the other two, we automatically have to give you a new – a second look. But my only point is we're now looking at whether you satisfy the gatekeeping under this more relaxed standard. Right. And the gatekeeping clearly requires you to demonstrate that there has been a change since your last habeas or 2255. Right. And that the change is based on a Supreme Court decision that's applicable. And that's what happened in Hubbard. I mean, 16 – they found that 16b, it was not implausible that that was void for vagueness. And Hubbard also – I mean, there's an enumerated offenses clause under which that burglary could have fallen, yet the court still granted the petition. And so – and, Your Honor, I think there are some cases to look at that are helpful on that point. For example, in the 11th Circuit, there's a case called In re Chance, and there's another case called In re Adams. It sort of addresses this point and says, look, the claim here is the Johnson claim, and they authorize a successor petition based on the Johnson claim. And then whether or not something actually qualifies under the remaining force clause is a prejudice inquiry. It's not subject to the 2255H2 requirements because it's not a stand-alone claim. And again – But if Johnson gets rid of the residual clause in there, it doesn't necessarily get you through the gate. In other words, we have to show some plausibility or some showing that you're going to get through the gate. Well, we get through the gate. You've got that right wing hanging on the fence of the gate. But that's a question of the merits, Your Honor. That's a question of prejudice of the merits. We get through the gate. I agree with you that – I agree with you that if it's implausible that, you know, we can satisfy the force clause, then, yes, it should be denied, but it's not – How do we get to go to look at the force clause in your view? Well, Your Honor, a cursory glance of the merit means that we just have to show that the claim is not implausible. And so when we look at our – I think you can look at this circuit's case law, which is still binding on this Court, Torres-Miguel, and in Torres-Miguel, the Court said that, of course, serious bodily injury or death does not equal violent physical force. The Court then gave an example of poisoning, which is in the murder statute, as not qualifying as strong physical force. The Court then embraced three – Wait a minute. Why doesn't the Supreme Court's decision in Castleman answer this case? Your Honor, it doesn't. And, in fact, this Court recently in U.S. v. McNeil said that a government was making the same argument, that Castleman overruled Torres-Miguel. And the Court in U.S. v. McNeil said, no, that's a dubious proposition because, actually, in Castleman, the Court said it wasn't deciding the issue of whether physical injury necessarily equals strong physical force. You're dealing with physical force, right? Pardon me? Aren't we dealing with physical force here? Well, here, Your Honor, it's a different type of physical force in Castleman. All that – they were dealing with – Why is it different? I mean, Castleman even addresses poisoning. Right, right. But the Court went to great lengths to explain that the clause there, which was defining a misdemeanor crime of domestic violence, only required de minimis force, and then specifically said we are not deciding whether physical injury necessarily requires violent physical force because – Wait a minute. But our force clause here, doesn't that just deal with physical force? No, it requires violent physical force. Your Honor, there's a case called Karimi v. – You had said injury. I'm saying that our force clause here, the 924C force clause, requires violent physical force, strong physical force, just like the ACCA force clause that the Castleman said is different from the misdemeanor crime of domestic violence force clause. It's clear here, and there's no dispute, I think, that this force clause under 924C requires strong physical force, violent physical force. Is looking at the force clause and having these discussions, and you may be wrong, you may be right, on your analysis and what the Castleman means, is that looking at the merits? Is it looking at the merits of his claim when, in fact, we're just looking at the law that's applicable to his claim, whether you call it gatekeeping or anything else? It strikes me very odd. Judge Niemeyer sort of focused on this. If you say you have to prove 1, 2, and 3, and the claim is, I mean, you could be proved under 1, 2, or 3, and you go, we have a claim that 3 does not cover us, but everybody could agree that 1 and 2 do cover you, could agree to that, the court has to send the case back and let somebody develop 3 when it's clear as a bell that 1 and 2, in my hypothetical, would prevent any relief. That doesn't make any sense to me. Well, Your Honor, if... I mean, that may follow some formula, but what sense does that make? Well, I think it makes sense. Your Honor, if you're right, if it did fall, if as a matter of law, for example, in Hubbard, this... I know that, so I'm asking that hypothetical. If 1 or 2, as a matter of law, would cover the conduct and support, there's no claim under that. You absolutely lose. Why would we explore 3? Yeah, I agree with you on that, Your Honor. Of course, I agree. But the thing here is that we do have a plausible claim on both the residual clause and the forced clause. You can't have a plausible claim unless you have a change in law as to the forced clause. You don't have a Supreme Court case that's retroactive that gives you that. You could have raised all that earlier. You're now on a second shot, right? This is a successive 2255, right? And in order to get that successive, to satisfy the statute, you have to have a Supreme Court decision making your claim retroactive. And it seemed to me you were hurt by the Supreme Court in Castleman. Well, Your Honor, if we were to accept your position on that, then that would mean that Hubbard would have to be gutted. In Hubbard, also, there was an elements clause. We're not deciding Hubbard. We're deciding a little bit of a different issue. But it's the same thing because also in Hubbard, there was a remaining elements clause that Johnson did not affect. Johnson in Hubbard affected the residual clause. There was plausibility that the 16B residual clause was void for vagueness. So the Court said because of the- Did we address in that the question that was raised by Judge Shedd just now when you have A, B, and C, and A and B couldn't be satisfied but C could under Johnson? Did we address that issue in Hubbard? Your Honor, I believe- I think it was just casually. There was a footnote dropped. Really, that's what it was. Well, I think it was addressed because, you know, the Court did find that they denied the successor application on the bank robbery because this Court had found that bank robbery qualifies under the force clause. So, again, I mean, I think I agree that if there isn't a plausible claim- You said violent force. You know, Johnson said violent force means capable of causing physical pain or injury to another person. Yes, and then also clarified that it must mean strong physical force or substantial degree of force. And in Castleman, actually, the Court went on to say, give an example of what that means, and the Court cited to a Seventh Circuit case, Flores v. Ashcroft, to say even a squeeze of the arm that causes bruising is not violent physical force. So there has to be substantial force, strong physical force. So why has the landscape changed on the force clause? There's been no change. This all could have been argued earlier in the first- Your Honor, it could not have been because at that point, it fell under the residual clause, Your Honor. So there was no claim. There was no claim. You have the burden of demonstrating it falls under neither in order to get- And I respectfully disagree, Your Honor. Again, I would encourage the Court to look to the case, In re Adams, in the Eleventh Circuit, the published case that came out that addresses directly this point, and it's 2000 WL 3269704. And in that case, Your Honor, again, the Court says that the claim is Johnson, and then as to whether or not it qualifies under the force clause, that's not a standalone claim. That's an issue of prejudice. And in the prejudice inquiry, all the courts that have been addressing this have said you apply the law that exists today. There are several courts in the district courts- But we can't give you relief under Johnson if you don't satisfy the force clause. In other words- But, Your Honor, that's why our claim is that it's dependent on Johnson. Before Johnson, we had no claim that this did not qualify under- You may still not have a claim. Pardon me? You may still have a claim. In other words, if we're looking at whether retaliatory killing, deliberate- I mean, this is probably the worst violent type of crime you could have. I mean, it's deliberate, it's intended, it's retaliatory, and it affects, it kills a person. If we can't conclude that that fits a force clause intuitively, it seems to me, and that's where the Supreme Court came from. I mean, they even talked about the silliness of trying to decide whether pulling a trigger to a gun is Scalia's comment. Your Honor, but we have to- Pulling the trigger is not strong force. You just pull the trigger, and that's all the force that's applied. Your Honor- It's the bullet that kills. So let me answer to both of your questions. So also, you know, there's a case that came out. It's a district court decision, U.S. v. Winston in the Eastern District of Virginia, that recently addressed the relies on language in 25H2, and says it's not because the government was making the same argument there that, you know, this is a force clause claim. This is not a Johnson claim, and the court said that language doesn't say you have to exclusively rely on a new rule of constitutional law. You know, so here in our case, our- Let me ask you this. Yes. You've done cases on statutory construction. Yes. This is sort of a statutory construction case. Yes. But not really because we aren't really looking at the words. What we really have decided is in looking at the words, you then decide what formula do you apply to be sure those words are met. You know, there are cases when we look at the actual words that Congress uses in a statute. Yes. And we go, to apply that word here is absurd, and we're not going to do it. When do we reach the point in the examination as a matter of law of what required and forced, as Judge Niemeyer says- Yes. To say this type of murder is not a violent crime? Who believes that? Nobody believes that. Oh, you can say courts have decided it, and I still say, who believes that? I mean, the result is absurd to say to anybody, take somebody out, retaliate, shoot them, five or six times in the head, stab them 174 times, that's not a violent, that's not a violent crime. The result is just so absurd, I wonder, and by the way, that's not looking at the word that Congress used and go, well, forced can't mean forced. That's merely looking at some construct that some court cases have placed on that. Do we not use common sense at some point and look at absurdity and just go, this cannot be? Your Honor, but we have Torres-Miguel, which is binding precedent. I'm asking, do we not look at, and I know what the analysis is. Do we not at some point just say, but we have another doctrine, which is absurd results? We use that to invalidate actual words that Congress uses. Why in the world couldn't it be used to invalidate a construct placed on words? That's even one step weaker of deference to me. Well, Your Honor, we have to operate within the law of this circuit, and beyond that, Your Honor, also. So that your view is, no matter how absurd the result is, that's just the way it goes. Well, if it's binding precedent in this court, I mean, you would have to conclude that Torres-Miguel is absurd. It's not a question of binding precedent because there's a belief that Castleman, you don't agree with that, but you could read Castleman to say this in any Supreme Court decision on some point about what force is. But then why not, in that conflict, if we follow what the court says, and just go? Every now and then, we have to stop and just go, our results just cannot be absurd. And how more absurd can it be? And by the way, I'm not knocking any judges because they decided under what was presented to them and how they argued, but I'm raising this question. I'm going to ask the government the same thing. Right. To say that this type of incident is not violent crime, what, I mean, what is then? There is no such thing. Your Honor, I would agree with you. Okay. I would agree with you that what we're talking about is horrendous conduct. I mean, nobody would deny that. It's absurd in any kind of normal use of the word to say it's not a violent crime. But also the absurdity argument. I think it's important to look at, like, what Congress's intent was when they passed, when they. . . You know what? I wish we could certify this to Congress. I don't think you would really like the answer if we said to Congress, do you think what happened here, retaliating against somebody that snitched on a drug dealer, I think he was a drug dealer, who tracked him down and then executed him and mutilated him. Do you think we judges want to know, is that violent? You know what they would file?  Well, Your Honor. If you could certify it to them, I don't think there's a chance you could win that argument. Your Honor, when they passed these statutes, the ACCA statute, 924C, there was this residual clause. So, yes, absolutely Congress's intent was to include murder under that residual clause. I would give that to you. And there is an easy fix. No, they meant they put it under force. They passed the residual clause to get everything else they couldn't think about at the time. Do you know I used to work up there, those people? I know that, Your Honor. I do know that. That act was passed. It was not passed with an eye toward how in the world can we figure out in the future some complicated way that violent people won't be punished. I don't think that was at play at all. Well, Your Honor, with Torres Miguel in place, again, we have – all we're asking for is – Is, again, what you think we have to do under Miguel. Under Miguel Torres? Under Miguel Torres, I think you have to grant this petition because it's not implausible that under Torres Miguel that our offense here qualifies as a – it doesn't qualify as a crime of violence, Your Honor. I mean, I don't – I – no, I think all you have to do is say, yes, looking at cursory glance of the merits, it's not implausible that the 924C conviction is void. And I think that that means that you look at the residual clause and our argument is not implausible under that. And then if it's not foreclosed under the force clause, I think, then it should be authorized. Just like in Hubbard, they didn't authorize – You think Miguel Torres goes to the force issue? That goes to the force issue, Your Honor. Just like in Hubbard – You don't think Castleman is a superseding decision on force as to Torres? Pardon me? You don't think Castleman as a later decision supersedes Torres? Well, Your Honor, it's not just me. The court in McNeil said the government suggests that the Supreme Court's decision in Castleman has abrogated the distinction that we recognize in Torres Miguel between the use of force and causation of injury. That strikes us as a dubious proposition. I'm talking about the force and causation of injury, and that's wording from another statute here. We're just dealing with force. No, no. They were referring to the 924C force clause in U.S. v. McNeil. And the government there was arguing that Castleman overrules the reasoning of Torres Miguel that was applicable to the force clause in the 924C, and the court rejected that argument. So all I'm saying, Your Honor, is that Mr. Irby should get his day in court. Now, we may be right. Maybe we're not right. We don't have to show that we're right, that we're likely right, just that maybe we're right. And that's all we're asking for at this low standard. Again, the court's – When was Miguel decided? Torres Miguel in 2012, Your Honor. And that's not a Supreme Court case. No, that's – But, again, I think I know where you're going. Johnson is the case. That's our claim as to whether or not something qualifies under the force clause. Again, that is not the standalone claim. And every 2255 case is going to have a prejudice analysis. When was the first 2255 in this case? Pardon me? When was the first 2255 filed? It was filed in 2006, Your Honor. But, Your Honor, again, if you'll hear me out on the prejudice inquiry, if this is not granted because there has to be a force clause analysis, then that means that Hubbard was wrongly decided in every case. There have been hundreds of cases where 924C successor petitions have been granted, that every one of those decisions was wrong. You would have to come to that conclusion, because every one of those cases has a force clause or enumerated offense clause. That's why in In re Chance, the 11th Circuit was – We're looking in this case. That's too general an observation because, in this case, we're looking about a successive petition with respect to a conviction for retaliatory killing. Sure. And whether that was properly used to enhance or to justify a 924C. Right. And the – when you start with the retaliatory killing, you don't even think in terms of the residual clause. You'd think in terms of is murder in retaliation, premeditated murder in retaliation, a crime of violence. And the force clause seems to hit it. Now, you argue, well, a lower court case, our case later, says, well, poisoning isn't, and since it's categorical, he could have done it by poisoning. And the Supreme Court may not have overruled that, but the Supreme Court said that is force in defining force. And I know in even the Johnson definition of force, you always stop at violent force, but they go on to explain what they mean. And poisoning and firing a bullet are about the same thing. You put into – in the causation stream by physical force an event that causes somebody to be injured or dead. And that's the definition, and they made that clear in Castleman, how to define the Johnson force. If they – regardless of how they treated poisoning, that's how they interpreted that. But you need, I think – I mean, if we're going to grant the claim, you need to have a plausibility that we can grant the claim. And the question is, the only plausibility that Congress has allowed is that it be based on a Supreme Court decision. And I don't know that a Supreme Court decision helps you in this case. But, Your Honor, again, I repeat that. Again, in Hubbard, too, there was an element – there was – burglary was at issue. They didn't decide this issue directly. This was not faced. This issue of whether a crime clearly violating the force clause we must look at again because a lesser argument that it may have violated the residual clause therefore opens the gate. That isn't what we held in Hubbard. But here also it's not clear that it falls under the force clause. That's our issue. It is plausible that under Torres Miguel, which is still binding law. And the Supreme Court said it wasn't decided. It's in the statute. I mean, it's not clear. It's in the statute. You have to satisfy that. But the statute says that there has – as interpreted by this court under 16A, it says there has to be strong physical force. And Torres Miguel is right on point saying death does not – How is there strong physical force in firing a gun? Pardon me, Your Honor? How is there strong physical force? Well, I think because that's like taking a knife and stabbing somebody. No, no, that – Because that – Taking a knife and stabbing somebody is strong physical force. Firing a gun is the flick of a finger. Well, Your Honor, we have Torres Miguel, which says that – I don't know how the court gets around Torres Miguel because it's binding circuit. And even after Castleman, this court has said that Castleman does not overrule Torres Miguel. Pardon me? Castleman even uses the example of pulling the trigger as physical force. Well, one other point, too, Your Honor. Which point is it? And analogizes it to poisoning. Pardon me? And analogizes it to poisoning. And Torres Miguel said poisoning does not equal violent physical force. And, Your Honor, beyond that – McNeil, when it says dubious, you think that has decided the question? Well, I think – You're relying on that case for a circuit case that you say does – Your argument is that controls us after Castleman. But you said it – they said that was dubious. They didn't say that that is not – they didn't decide this point, did they? I think what they decided was Castleman hasn't overruled Torres Miguel. So Torres, because the Castle – and then they specifically cite to the quote in Castleman, which says that the court isn't deciding whether physical injury necessarily requires violent physical force. So I think what we're left with, Your Honor, is Torres Miguel is still the law. It's binding precedent. And because of that, Your Honor, it's not implausible under the residual clause or the force. All right. Let's give your other side a chance. You'll come back up, right? Thank you, Your Honor. Yeah, that's fine. All right. Mr. Rahman. Thank you very much, Judge Niemeyer. May it please the Court. My name is Sujit Rahman. I'm the Appellate Chief for the District of Maryland, appearing on behalf of the United States. Your Honors, I think this Court can, certainly at the threshold stage of this case, address the question of whether witness retaliatory murder in violation of Section 1513 is a crime of violence under the 924C Force Clause. And, in fact, I think Hubbard, which is a case that has been discussed a fair amount this morning, squarely contemplates that, where a 924C claim was raised in Hubbard, and the Hubbard panel said that that claim was not viable because armed bank robbery, which is an issue, Judge Shedd, that was decided in McNeil, is a crime of violence under the Elements Clause, the Force Clause. And so they rejected the Johnson-based claim in Hubbard. Now, that very same principle applies in this case. This Court can certainly look to the 924C Force Clause just at a prima facie level to determine whether or not witness retaliatory murder is a crime of violence. Now, let me offer several reasons why I think pretty clearly murder is a crime of violence under the Force Clause. I'd like to spend the balance of my time talking about Torres Miguel. It's hard to believe you actually had to make that argument, isn't it? Your Honor, I am proud to stand here and make the argument because I don't want to take anything for granted. I mean, I think, you know. No, but I mean you take my point. I certainly do. There was a discussion earlier about legislative history, Judge Shedd. When Congress enacted the ACCA back in 1986, there was a clear reference to the Force Clause, that murder is a crime that has, as an element, we've cited it in our papers. So certainly, I'm not saying the Court should rely on a committee report. I think you've got to look at the statute. But everyone agrees that murder at that time under the ACCA, which is a similar, it's an identical Force Clause, contemplated murder. So when Congress enacted Section 924C, I think a couple of years earlier, it might have been the same Congress, I'm not sure, just within a couple of years, it just doesn't meet the common sense test to say that when Congress used the very same language, you know, to define the use of a firearm in furtherance of a crime of violence, that it didn't include murder when the legislative history for the ACCA clearly includes it. So that's my legislative history point. I do want to talk about Torres Miguel and poisoning. But before I get there, let me make one preliminary point. At its root, let's assume Torres Miguel is still good law, but let's assume that, okay? That claim is a statutory claim, right? The language about physical force is in both the 924C Force Clause and it's in the 924C Residual Clause. So if Mr. Irby felt like he was actually innocent of his 924C conviction, his claim is based on Torres Miguel. It is not based on Johnson. It is not based on a new rule of constitutional law made retroactive by the Supreme Court. It's a statutory rule. It's after Torres Miguel came down, guess what? I have not committed any crime under 924C, either provision. So he should have filed his petition. What do you take to his argument, and I think this is his only way out of that argument you're making, is that if he has two prongs to his habeas, the Residual Clause and the Force Clause, that Hubbard authorizes him to file a second petition under Johnson for one of them. I don't think it does, and here's why, Your Honor. Because Torres Miguel, that rationale, that poisoning does not equal physical force, applies to both prongs, right? Under his theory, murder has never been a crime of violence because categorically it does not involve the use of violent physical force under both clauses. Except his argument is the Residual Clause is held unconstitutional. He argues it is unconstitutional under Johnson. Right. And since it's unconstitutional, we don't go into interpreting the Residual Clause. No, that's right. And he has a claim under that. Right. And he said, just because I may not satisfy the Force Clause, I certainly have a plausible claim under the Residual Clause. Judge Meemer, I think my direct answer to you is that he didn't have a claim under the Residual Clause after Torres Miguel, right? Under the reasoning of Torres Miguel, he wasn't in violation of the Residual Clause as of 2012. Because under the reasoning of Torres Miguel, and again, I'm going to spend the rest of my argument arguing why, as Judge Agee alluded to earlier, I think Castleman greatly supersedes Torres Miguel. There might be a little wedge where Torres Miguel still survives. But just under the theory that Torres Miguel is still valid law, he still loses because that argument should have been raised within one year of Torres Miguel. It's a statutory argument, the argument that he's making, that poisoning is not physical force. That is a statutory argument. It is not an argument based on a new rule of constitutional law. And then he would not have passed the gateway within one year of Torres Miguel because he doesn't satisfy 2255H2, right? That's a preliminary point. Let's get right to Torres Miguel. I do think the Supreme Court pretty definitively has cabined Torres Miguel. We've talked about the language, Your Honors, and I'm certainly happy to read it for the Court. I know the Court's aware of it. Here is the language in Torres Miguel. It's at page 168 to 169 of the decision. A defendant can violate statutes like Section 422A, which is the California threat statute, by the way, which is all about injury, Judge Agee, and you've made that point earlier. I think it's a very valid one. It's a threat statute talking about injury. It never talks about force. By threatening to poison another, comma, this is the key point here, which involves no use or threatened use of force. That's what this Court ruled before Castleman. Perfectly fair reading of the law at the time. Here's Castleman, which comes down two years later, Supreme Court. The act of employing poison knowingly as a device to cause physical harm, beginning of the sentence, is the use of force in terms of poisoning. So that is a square overruling. Now, we can talk about what force means, and I do think that's the one wedge where Torres Miguel still sort of lives. I do think, Judge Agee, just to be very clear, Castleman did deal with a different statute. It was the 922G misdemeanor provision and defined force in terms of the common law, you know, unconsented touching, the de minimis. So I do think Torres Miguel does still survive in that one little wedge about what is force, but it has been squarely overruled in the question of what is the use of force, right, which is a very important element of the 924C force clause. Castleman has squarely overruled the notion that poisoning, employing poisoning, is not a use of force. I've just read it to the Court. In Torres Miguel, this Court held that threatening to poison another person does not involve the use of force. And in Castleman, the Supreme Court said no. Poisoning somebody is absolutely the use of force. But that does raise the question, Judge Niemeyer, of, well, what is force? Now, Your Honor has mentioned several times a language from Johnson, the 2010 Johnson case. The phrase physical force means violent force, and, of course, the defendant never mentions the rest of it. That is force capable of causing physical pain or injury to another person. Now, I would submit to this Court poisoning somebody is absolutely force capable of causing physical pain or injury. And, Judge Shedd, to get back to your earlier point, common sense tells you that. You're trying to kill somebody. That absolutely is the case. So that's how I reconcile, Your Honors, Torres Miguel with Castleman. I do think the McNeil Court probably had it right in that, you know, I don't think Castleman squarely overrules Torres Miguel in its entirety. It certainly overrules Torres Miguel on the question of what is the use of force, but then on the question of what is force, you know, what is physical force? Is it violent force or is it just a minimus force? I think you go back to Johnson, Judge Neumeier. And when you look at the language I've just described to this Court, force capable of causing physical pain or injury. You're talking about the first Johnson, aren't you? 2010. Right. Absolutely right, Judge Agee. Judge Shedd, I think any reasonable person standing on the street who hears about the Court's opinions would say, of course, poisoning is an act. Not if they had a law degree. I think anyone would know that. And many of our friends in Congress, you know, don't have law degrees, and they're the ones writing the laws, right? And so the question here ultimately is what did Congress intend? Did Congress really intend for witness murder not to be a crime of violence when it enacted Section 924C? It doesn't make any sense. Do you understand my talking about the theory where we as a Court sometimes will look at the actual words in a statute. We don't do it very often. It's hard to understand how you would even apply that doctrine to the words and go that's an absurd result. But that's what Congress said. That's the words. Could Congress be stupid? We'll leave that to the average person on the street corner to answer, too. But the point is we as a Court say we can look at actual words and say, Congress, you said it. We know you said it, but you couldn't have meant it. And now we're looking at absurd results. We're not looking at the words and saying that word can't mean it. We're saying the construct we have created leads to an absurd result, but it's sacrosanct. You can't say anything about it. And it all, in a general sense, is statutory construction. Right. Yeah, well, I mean, that's a really important point Judge Shedd. You know, the categorical approach is important. It's sanctioned by the Supreme Court. You can't ignore it. Let's stop for a second. Yeah. Let me say something about categorical approach. Why is there justification of going with the categorical approach? You did it to save time and not have many trials, save judicial time. Do you folks think that that has saved any time? It hasn't saved me any time. We're now having to go state by state, violation by violation, to decide if that meets the definition of the categorical approach. It does not save any time that I can ever save. Go ahead with your point. Well, you've made the broader point, Judge Shedd, which is, you know, judicially constructed aids of construction certainly can't trump common sense, and it certainly shouldn't trump what Congress intended. And, again, I just can't think of a way in which this idea that murdering somebody, even, you know, bank robbery, everyone agrees, after McNeil, certainly, is a crime of violence. And now we're in this absurd position where— The argument, I think, he may have this argument you're addressing, but I understand his stronger argument is that he has made a claim that the residual clause doesn't apply because of Johnson 2, the recent Johnson. And that is an intervening Supreme Court made retroactive by Welch. And he says, therefore, I satisfy H. What's your response to that? My response is you do not satisfy H2 unless if your predicate offense is clearly a crime of violence under the force clause. Right? In other words, Johnson is irrelevant to your application, Mr. Irby. Well, I suggested that Johnson was irrelevant. He says that's where I made my claim. Well, I mean, you know, I've mentioned to the court why I think even Johnson, as a statutory matter, Johnson is irrelevant. Because, again, this claim is a Torres-Miguel claim. It's a Torres-Miguel claim is really what he's—he's trying to smuggle it in under Johnson. This is a Torres-Miguel claim. He should have— His argument, the further argument, as I understand it, is that we essentially decided this same dichotomy in Hubbard that the force clause could have been available there. And if it was, there would have been no basis by which to grant the successive motion. Well, my response, Judge Agee, is I'm not sure about the career offender aspect of Hubbard. I just haven't looked at that closely. What I have looked at is the 924C aspect of Hubbard. Because this very claim was raised in Hubbard, right? He attacked his 924C conviction as well in his petition. No, but that's just the point he's making. The point he's making, the point is that Hubbard suggests that the force clause might apply, but nonetheless allowed the man to present his writ because he had a Johnson claim. Well, again, I think—I don't think the Hubbard court held that if the particular predicate offense qualifies under the force clause that the application can be authorized. Because, again, Johnson is irrelevant to the claim, right? Johnson is irrelevant if the particular offense— Well, that makes a lot of sense. And the question is I'm not sure Hubbard decided this issue directly. I'm not sure it did either. It's a little bit of a—there is a little bit of a rub there, isn't there? Well, perhaps. Although, again, you know, I would cite the Eleventh Circuit case in Ray Colon, which I've cited in my briefing, where the court refused to authorize a 924C—it's the same case, a 924C application, and they held that Mr. Colon's 924C sentence is valid under the force clause without regard to the 924C residual clause. I'm sorry, but which court? The Eleventh Circuit, Your Honor. I'm not binding on this court, but persuasive. Thus, he has not made out a prima facie showing that his proposed Johnson residual clause claim meets the statutory criteria. So that's what other circuits have held, and I think it makes perfect sense. If your offense qualifies under the force clause, your application does not rely upon Johnson because Johnson is irrelevant to your claim. You're barred or you're denied under the force clause. I hope that answers the Court's questions because I think if clearly your predicate offense that you're attacking on a successive 2255, by the way, not on direct appeal, not on an initial 2255, in a successive 2255, for the very first time, you know, if it qualifies under the force clause, I don't think this Court needs to waste its time, and certainly the District Court doesn't need to waste its time analyzing a question that is irrelevant to the Johnson, the ultimate Johnson. Your response to your colleague as to why Hubbard does not control this case is that Hubbard didn't deal definitively with an alternative method about which the claim would be denied. Yes, that's my first response, Judge Agee. And my second response is this identical claim, the 924C issue, was raised in Hubbard, and the Hubbard Court said we are not going to authorize your 924C claim because it qualifies under the force clause. That's exactly my point. And here, premeditated, you know, first-degree murder, witness retaliatory murder in violation of 1513, in my view, clearly qualifies under the force clause. So it's perfectly consistent with Hubbard is what I'm trying to say. And as far as Torres-Miguel goes, I've offered the reasons why I think certainly, you know, there is a sliver. I think there is a sliver where Torres-Miguel still lives, although you can distinguish it. Number one, Judge Agee, I think you pointed out earlier, completely different statute. It was a threat statute that dealt with the use of injury, the injury aspect of things, not the force. So it's distinguishable just on what we're talking about. But secondly, I think the Court probably should reach the ultimate question of how does Castleman and Torres-Miguel fit? And, you know, I've read the language. I think there's a square overruling of the idea that poisoning someone isn't the use of force. I think Torres-Miguel has just been pulled out in that aspect. But there is this last little bit about physical force. You know, use of force, fine, but what is force? And that's where, I think, Judge Niemeyer, you have to go back to Johnson 2010 and say what is physical force. And certainly poisoning somebody, you know, I think in any commonsensical view. Well, as I recall, the clause that defines physical force, a violent force, I think, violent force, is that it is force capable of causing pain or injury. Yeah, that's absolutely right. And Mr. Patel's response to that is, well, it has to be strong force causing pain or injury. I don't know if they put the word strong in that particular clause. The language I've read, Judge Niemeyer, which I think is the language you've been reading, is the phrase physical force, this is straight from Johnson 2010, means violent force, M-dash. That is force capable of causing physical pain or injury. I think that's the definition that Justice Scalia offered in Johnson. So, you know, does poisoning meet that definition? I mean, I think by definition. Well, of course it does because it's a force capable of causing pain and injury. Right. And then the question is how much force do you need? And the response is that may not be an appropriate question because the force required to pull a trigger is almost zilch. That's right. You can have a hair trigger. That's right. And in Castleman? A bullet causes a violent result. Well, fair enough. Thank you. Yes, Your Honor. Just out of curiosity and closing counsel, can you answer the same question? Since Johnson 2, are you aware of any successive 2255 that's been granted after Johnson 2 where the predicate offense was a retaliatory murder? In the district court, Your Honor, or by the Court of Appeals? No, absolutely not. In fact, Judge Agee, if I can answer that question, in Hill v. United States, which we've cited at page 11 of our brief, the Seventh Circuit, Judge Posner might have written the opinion, denied an application for a successive 2255 holding that attempted murder under Illinois law, so common law Illinois murder is categorically a crime of violence under the force clause. So not only do we, of course, not authorize them, we've got at least the Seventh Circuit. How about expanding Judge Agee's question to say not just retaliatory killing, but murder under Section 1111? I am not aware of any. Perhaps defense counsel is. I'm not aware of any. Thank you, Your Honors. All right. We'll get you back for your rebuttal now. Yes, yes, Your Honor. I have a lot to say. So first of all, Andre Jackson that we cited to in our brief, that was a successor that was granted after the government had an opportunity brief, and one of the predicate offenses was murder under 1111. It wasn't retaliatory murder, but it was murder, and that's essentially the core of our claim, that that doesn't. What was the theory of allowing it? The theory that we're saying here that there was a new rule of constitutional law. The claim was a Johnson claim. Which court did that? The Fourth Circuit. We cited it to in our brief. It's an unpublished decision, Your Honor, but it's in our brief. It's in Ray Jackson. We have some rules about unpublished decisions. I know, I know, I know. We don't even read those. But, Your Honor, I wanted to get back to your point about why this is a Johnson claim. I feel like I really need to explain that to you. The government says that Mr. Irby, after Torres Miguel, one year after, should have filed a claim, but he would have gotten nowhere because it would have still fallen under the residual clause, the offense of murder. Of course it qualified under the residual clause until Johnson 2. It was only after Johnson 2 that he had any claim that his 924C conviction is void. That's why this claim that he's making, it's dependent upon Johnson 2. And, again, the Eleventh Circuit case they talked about. It's dependent only insofar as you may need Johnson 2 for a backup. In other words, the way you just laid it out is that he would have had a claim under the force clause but is precluded so then it clearly fell under the residual clause until Johnson. Right. It would have been completely and utterly futile. There would have been no claim. He had no viable claim before Johnson 2. Well, he may still not have a viable claim but for a different reason that the residual clause didn't help him. In other words, that he still needs to have some decision that says the force clause is in doubt with respect to murder. Right. I mean, there would have been no claim that was viable at that point. Only after Johnson 2 did it make sense for him to file a 2255 successor application under 2255H2. And there's lots of district court decisions, Your Honor, that have also addressed this. He supposes that he would have to satisfy both the force clause and the residual clause because there may be a barrier to the force clause but he could rely on the residual clause. And then Johnson took that away. Well, now the flip is he has to satisfy both the residual or the force clause and Johnson may help him on the residual clause but. Your Honor, I agree that in order for him to ultimately get relief, right, we're going to have to satisfy the residual clause and the force clause. But the issue is, does he get in under the gatekeeping standard? What's his claim? His claim is that it's a Johnson claim. What would we have to say about the force clause in our look and peek? I think all you have to say is that it's not implausible. You know, under the merits. What would we say to deny his claim? What would we have to say about the force clause? To deny his claim? I think you would have to say that it is absolutely implausible, that it's frivolous, our claim on the force clause. And I think that's the only way that you could deny his claim at this point. And the laugh test doesn't apply, right? Yeah. And I don't know how the government can stay with a straight face after Torres Miguel is binding law. The government talked about threat. Threat is in the force clause. Torres Miguel didn't turn on threat. What Torres Miguel turned on was the object of the threat and the object of the threat. And this came after Johnson won also, Your Honor, after the court had defined what violent physical force is. And, by the way, the government did not read the rest of the definition. When you go back, it does absolutely say there must be strong physical force, substantial force. Again, that's even made clear in Cassel. Do you think you went on the implausibility, not the implausible test? Yes, Your Honor. Do you argue to us that you went on the merits test? But that's a part of it. Is it implausible that we would win on the merits? I mean, that's the question. Implausible doesn't mean that you do win. Yeah, we may not win, Your Honor. I totally agree with you. But it's such a low burden for us at this point. And, again, I would just repeat that the Hubbard court emphasized this very strongly, that the government has an almost insurmountable burden at this point. So, as long as it's plausible, and I don't know how it can be said that it's not plausible. As absurd as you may think Torres-Miguel is, Your Honor, it's still the law. I mean, it's still binding. Is it still that it's plausibly binding? Would that do it for you? Your Honor, even if it's plausibly binding, yes. The point is, is it plausible that it's binding? Yes. That it plausibly gives you a claim? Yes. That that could be considered by some people to be plausible? You're home free. Yes, Your Honor. Or at least you get a delay. Yes, Your Honor. Would your brief on the merits be any different than the brief you've presented in this authorization? Your Honor, I Has any court taken your request for authorization and said, well, it may be plausible, but we now rule on the merits, and it's just not so? Your Honor, I probably would flesh it out even more. I would cite to more cases. I would talk about the reasoning of because, you know, Torres-Miguel also, it's not just this circuit. Why do you think we want to hear it? Well, Torres-Miguel also cited to other circuit cases, the Second Circuit, the Fifth Circuit, the Tenth Circuit. So, you know, we're not crazy here in the Fourth Circuit to have Torres-Miguel. And one other case I wanted But it's plausible we've been consistent? It may be plausible, Your Honor. But one other case I really wanted the court to look at, too, on this Castleman point is White v. Lynch. It's a First Circuit case which conclusively held that Castleman does not overrule basically the Torres-Miguel ruling, that serious physical or physical injury does not necessarily require violent physical force. It goes in great length to explain why Castleman doesn't overrule that holding. I don't quite understand that. You know, a circuit court sits there and tries to take a Supreme Court case which categorically and clearly says poisoning involves the use of force and says, oh, they didn't quite mean that. And then they have a discussion about it. And even in the concurrence, Justice Scalia points out that it's analogous to shooting. That force was no greater than the force in poisoning. And I don't understand where the circuit courts get the boldness to say they didn't mean what they said. Well, Your Honor, our circuit, too, said that in McNeil. Well, it's a hesitation. You know. I'd like to look at that again. One other thing I just wanted to point out, too. One thing that Castleman did not really address is the absence of force leading to physical injury. For example, by horrible things, Judge Shedd, but starving a child to death or withholding insulin. Castleman didn't address that. But murder can be committed by those means also. So it's not just poisoning, Your Honor. So how could the absence of force be force? I think about that. There is no crime that is a crime of violence. Because, you know, we've held various state statutes of crimes of violence. And you can conceive of these far-out situations. Even in murder, I guess you can get somebody as so reckless and you say, oh, there's no premeditation. Well, Your Honor, I would disagree with. There are some statutes I can point to forcibly breaking into a post office because the force clause also includes force against. But murder is not. Strange results, but under Torres-Miguel, this is the law. There's also another statute, tampering with a witness. It's a tampering statute, but it says by physical force or threat of physical force, which is different from the murder statute here, which just requires an intent to retaliate, but the murder statute doesn't require physical force. And then bank robbery, too, this Court has found qualifies. Bank robbery. You can conceive a lot of ways. You can deceive yourself into the bank. You can trick yourself into the bank. Anyway. So, Your Honor, again, I will take this all up, put it in the wearing blender and see what comes out. Okay. Thank you for hearing my argument. Thank you.
judges: Paul V. Niemeyer, Dennis W. Shedd, G. Steven Agee